## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22418-CIV-MORENO/TORRES

CLEAR MARINE VENTURES, LTD.,

      Plaintiff,

vs.

BRUNSWICK CORP., CAZADORES, INC.,
CATERPILLER, INC., MARINE MAX,
INC., PANTROPIC POWER, INC.,
DONALD STEVENS, and ALLIED
RICHARD BERTRAM MARINE GROUP,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT MARINE MAX'S MOTION TO DISMISS

      This matter is before the Court on Defendant Marine Max, Inc.'s ("Marine Max") Motion to Dismiss Count X of Clear Marine Venture, Ltd.'s ("Clear Marine") Second Amended Complaint [D.E. 137], pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. We have considered the motion, response, and reply thereto, and the record in this case. For the foregoing reasons the motion to dismiss should be granted.

### I.  BACKGROUND

      Plaintiff Clear Marine brought the above-captioned matter in August 29, 2008 against various Defendants, asserting claims for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Count X, and Negligence, Count XIII

against Defendant Marine Max.  Marine Max filed a Motion to Dismiss First Amended Complaint [D.E. 48] on November 6, 2008.  The Court granted in part Marine Max's motion to dismiss, and ordered Clear Marine to file an amended complaint as to Defendant Marine Max by April 30, 2009 that included more specific actual damages allegations under FDUTPA. Marine Max was ordered to respond to the amended complaint by May 18, 2009.  Marine Max then filed the instant Motion to Dismiss Count X of Plaintiff's Second Amended Complaint.   Clear Marine then filed its response to Marine Max's motion on June 18, 2009.  [D.E. 161].

The facts here are based upon the factual allegations included in the pleadings. Clear Marine purchased a 64 C Convertible Hatteras sport-fishing vessel ("Ventura II") from Co-Defendant Cazadores, Inc. in January 2007 for $1,925,000.  Ventura II was covered by the Hatteras Express Limited Warranty that included a five year "Structural Hull Defect" Warranty and a one year "Non-Structural Hull Defect" Warranty involving material or workmanship defects.  [D.E. 134 ¶ 44].

After purchase, sea trial, and rigging, Clear Marine took Ventura II on its maiden voyage, during which Ventura II was unable to perform without unacceptable water spray, low ride, and cockpit flooding.  [D.E. 134 ¶ 49].  Upon complaining to Hatteras, Clear Marine was instructed to take Ventura II to Marine Max for updates and modifications covered by warranty. [D.E. 134 ¶ 52].  Hatteras, not Clear Marine, then instructed Marine Max to give Ventura II hull modifications.  [D.E. 134 ¶ 53].

Eventually Ventura II had to be taken to Marine Max on three separate occasions for hull and propeller modifications.  After each modification, ordered and

instructed by Hatteras, Marine Max represented to Clear Marine that the problems had been repaired. After each modification, Clear Marine was not satisfied. [D.E. 134 ¶¶ 55, 62, 71, and 110].

In the First Amended Complaint, Plaintiff sued Marine Max for $964,427.50 in fees in costs "related to the . . . repairs and service, as well as Captains' salaries, equipment, accessories, mortgage interest and legal fees" and for substantial damages, to be later calculated, resulting from the vessel's loss of value in the marketplace. This loss-of-value theory was based on the assertion that "expensive boats of this type develop reputations of their own and their performance, service and repair history greatly impact such vessel's market value." Thus, Plaintiff has sued for an excess of $ 3,000,000. [D.E. 46 ¶ 116]. The Court ordered Clear Marine to amend its original claim to include more specific actual damages allegations under FDUTPA. [D.E. 109].

In the Second Amended Complaint, Plaintiff's FDUTPA allegations in Count X remain unaltered. [D.E. 134 ¶¶ 113, 205, and 207]. However, the Second Amended Complaint added an allegation of risk of substantial hull fracture failure due to Marine Max's modifications. [D.E. 134 ¶ 70]. Clear Marine's Memorandum in Opposition to Marine Max's Motion to Dismiss, but not the complaint itself, also referenced an allegation of unsellability due to the aesthetic undesirability of Ventura II's modifications. [D.E. 161 at 6].

The pending Motion to Dismiss argues that the FDUTPA claim fails to allege "actual damages" as required by FDUTPA Section 501.211(2). Marine Max argues that any risk of bodily injury, fees in costs for repairs, service, captains' salaries, equipment,

3

mortgage interest or legal fees all fall under the purview of "consequential damages" or were covered and paid for by the Hatteras Express Limited Warranty.  Marine Max also argues that its "deceit" did not result in a difference in market value. Clear Marine claims, however, that all fees in costs are recoverable under FDUTPA. Clear Marine also argues that risk of bodily injury, destruction of aesthetic appeal and potential risk of hull fracture in open waters, along with the original substantial hull defect, are recoverable "actual damages" that rise above the speculative level.

## II.  ANALYSIS

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Fed. R. Civ. P. 10(c) allows reference and incorporation of pleadings and exhibits in the same case, but does not circumvent the definiteness requirement of Rule 8(a)(2).

Pursuant to *Twombly*, to survive a 12(b)(6) motion to dismiss a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."

4

127 S. Ct. at 1965.  Although a claim challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).  The Court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).

To state a claim for Deceptive and Unfair Trade Practices under Florida law, a party must plead: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.  *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007).

Clear Marine alleges damages against Marine Max in five distinct forms:  (1) Aesthetic modifications that rendered Ventura II unsellable.   During these modifications, Marine Max cut away lower deckhouse wings, ground down propeller tunnels, added deflector chins under the forward bow cutouts, and changed the shape of the bow thruster tubes.  Of these modifications, Clear Marine alleges that the new tear-drop shape of the bow thruster tubes is aesthetically undesirable, and that the hull deflecting chins are odd-shaped and aesthetically unpleasing.  [D.E. 161 at 4-5].  (2) $964,427 in fees and costs *related to* these modifications, as well as Captains' salaries, rigging, mortgage interest and legal fees.  [D.E. 134 ¶ 113].  (3) Loss of market value, to be later calculated but over and beyond the $1,925,000 purchase price, due to reputation of service and repair history.  [D.E. 134 ¶ 113].  (4) Risk of bodily injury

to Clear Marine, its representatives and its guests, due to Marine Max's misrepresentation that Ventura II was seaworthy.  [D.E. 134 ¶ 205].  (5) Risk of hull fracture failure in open waters, due to internal delaminating or air pockets attributed to Marine Max's hull modifications.  [D.E. 134 ¶ 70].

We must first determine whether any of  these allegations are recoverable "actual damages" under FDUTPA.  If so, we must analyze whether these "actual damages" raise a right to relief above the speculative level.  *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1221 (S.D. Fla. 2008).

### A.   *Actual Damages or Consequential Damages*

As a general rule, the measure of actual damages under the FDUTPA is the difference in market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to agreement between the parties.  A notable exception to the general rule on actual damages is that when a product is rendered valueless as a result of the defect, then the purchase price is the appropriate measure of actual damages.  *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002).  Other damages are consequential, and thus barred by the FDUTPA.  *Marino*, 245 F.R.D. at 737.

Under this standard, all fees in costs related to repairs and services, including captains' salaries, equipment, accessories, mortgage interest and legal fees are not "actual damages" recoverable through FDUTPA.  As the actual Marine Max service and repair was covered by the Hatteras Express Limited Warranty and does not reflect a diminution of market value, these fees are therefore consequential and not

recoverable.  Nor does risk of bodily injury to Clear Marine, its representatives and guests qualify as "actual damages."  Thus, these allegations are barred by the letter of FDUTPA.

The bar to consequential damages also precludes claims on stigma damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 870 (Fla. 2d DCA 2006).  This rule bars Clear Marine's allegation that there is a stigma associated with the mixed service history of Ventura II.

Therefore, we have only to address the claims of market value diminution through aesthetic modifications and risk of hull fracture.  If these two allegations raise above the speculative level, then notice requirements are met and the claim survives the Motion to Dismiss.

### B.   *Claims are Too Speculative*

Clear Marine claims that aesthetically unpleasing hull deflecting chins and aesthetically undesirable tear-drop shaped bow thruster tubes have destroyed the aesthetic appearance of Ventura II.  Clear Marine further claims that, combined with her lack of fitness for her intended purpose, Ventura II is entirely unsellable. However, where a plaintiff gives no monetary figure as to the fair market value of his property or even affirmatively states that he attempted to sell the property and there were no offers, and there is not even a third party appraisal which shows the worth of the purchaser's property before and after modifications, no claim can be made. *McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356, 1359, (M.D. Fla. 2007).  Here, there is absolutely no information given as to fair market value, attempts to sell, offers, or

appraisals on value.  There is simply an unsupported assertion that Ventura II is worthless.

A notable exception to the general rule on actual damages is that when a product is rendered valueless as a result of the defect, then the purchase price is the appropriate measure of actual damages.  *Stires*, 243 F. Supp. 2d at 1322. Nevertheless, the purchase price of Ventura II was $1,925,000 in 2007, not "in excess of $3 million."  More importantly, both Clear Marine and Marine Max agree that Ventura II was fatally flawed upon hull design, not hull repair.  As stated in Marine Max's motion and repeated in Clear Marine's memorandum in opposition, "once a sea cow, always a sea cow." If Ventura II were rendered valueless as a result of a defect, that defect is rooted in hull design and construction, not modification.

A complaint's factual allegations must be enough to raise a right to relief above the speculative level.  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).  The claim must give the defendant fair notice of what the claim is and the grounds upon which it rests.  The plaintiff's obligation is to provide the grounds of his entitlement beyond just labels and conclusions, and a formulaic recitation of the elements of a cause of action.  *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1219-20 (S.D. Fla. 2008).  In the present case, we find that Clear Marine has not met its obligation of fair notice to Marine Max.  The label of "aesthetically unpleasing" has been given, the conclusion of "entirely unsellable" has been drawn, and the elements of the action have been recited.  However, as discussed

above, nowhere in the allegations has there been a suggestion of how the aesthetic changes affected Ventura II's value beyond mere speculation.

Finally, the risk of hull fracture failure in open waters does not rise above the level of speculation.  Speculations on Ventura II's possibility to break at some future date do not give Marine Max notice beyond labels and conclusions on a hypothetical level.

Because Clear Marine has not stated a cause of action against Marine Max based on "actual damages" that rise above the speculative level, Marine Max's Motion to Dismiss Count X should be granted.

### III.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant Marine Max's Motion to Dismiss Count X of the Second Amended Complaint should be **GRANTED** and Count X should be **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of October, 2009.


_____*/s/ Edwin G. Torres*_____
EDWIN G. TORRES
United States Magistrate Judge