UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22418-CIV-MORENO/TORRES

CLEAR MARINE VENTURES, LTD.,

    Plaintiff,

vs.

BRUNSWICK CORP.; CAZADORES, INC.; CATERPILLAR, INC.; MARINE MAX, INC.; PANTROPIC POWER, INC.; and DONALD STEVENS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT PANTROPIC POWER, INC.'S MOTION TO DISMISS

This matter is before the Court on Co-Defendant Pantropic Power, Inc.'s ("Pantropic") Motion to Dismiss Counts XI and XII of Clear Marine Venture, Ltd.'s ("Clear Marine") Second Amended Complaint [D.E. 134], pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted [D.E. 141]. We have considered the motion, response, and reply thereto, and the record in this case. The Court recommends that Pantropic's motion to dismiss Counts XI and XII of the Second Amended Complaint [D.E. 134] be granted in part and denied in part.

## I.   BACKGROUND

The facts here are based upon the allegations included in the Plaintiff's Second Amended Complaint [D.E. 134].  Clear Marine purchased a 64C Convertible Hatteras sport-fishing vessel ("Ventura II") in January 2007.  In October 2006, Clear Marine began exploring the potential purchase of the boat from Allied Richard Bertram Marine Group, the agent and broker for then-owner Cazadores. Clear Marine's employees inquired about the boat's previous repairs and modifications to Donald Stevens, a principal at Cazadores.  Caterpillar, Inc. manufactured the engines for the Ventura II.  Pantropic, Caterpillar's Fort Lauderdale-based representative, oversaw engine repairs that were actually completed by Marine Max. Inc.  Pantropic informed Clear Marine prior to the signing of the purchase agreement that Pantropic had overseen "factory updates" to the engine.  Clear Marine alleges that neither Pantropic, Caterpillar, nor Marine Max disclosed the extensive repairs made to the boat's engine prior to Clear Marine's purchase of the vessel.

Before closing the deal, Clear Marine conducted a sea trial of the unrigged boat and had a third party surveyor inspect the Ventura II for insurance purposes. Clear Marine took a list of needed repairs to Brunswick, and after confirming with Caterpillar and Pantropic that there were no problems with the vessel's engines, Clear Marine closed on the purchase of the boat on February 7, 2007.

After purchase, sea trial, and rigging, Clear Marine took Ventura II on its maiden voyage, during which Ventura II was unable to perform without unacceptable water spray, low ride, and cockpit flooding. Thereafter, Brunswick advised Clear Marine to send the boat to Marine Max's service boat yard in Fort Lauderdale.  Marine Max performed a series of hull modifications to the Ventura II. During its next voyage, Ventura II ran even lower in the water than before Marine Max's modifications.  Ventura II was again brought to Marine Max for another round of modifications, subsequently put to sea, and continued to suffer operational problems.

The vessel underwent a third round of modifications, only to then suffer a blown starboard engine in December 2007.  Clear Marine then called Caterpillar, the engine manufacturer.  During the repair process, Clear Marine alleges that it learned of previous oil analysis reports prepared by Pantropic.  Clear Marine alleges that contrary to Pantropic's previous representations, the oil analysis reports indicated engine problems in both engines.  Additionally, Clear Marine alleges that an examination of the reports indicates that they had been intentionally altered by Pantropic and Caterpillar to cover up the problems with the engines.  Clear Marine alleges that such tampering, as well as the representations by Pantropic and Caterpillar that there were no internal issues with the engines, constitute fraudulent misrepresentation on the part of Pantropic, as well as an agreement among the defendants not to disclose the repair history of Ventura II's

original engines. Clear Marine alleges that Pantropic intended that Clear Marine rely on its false representations, it did in fact rely on Pantropic's false representations, and that as a result, Clear Marine suffered substantial injury and damages.

Plaintiff Clear Marine filed this action on August 29, 2008 against Co-Defendant Pantropic asserting claims for Fraudulent Inducement and/or Concealment, Count XI, and Conspiracy to Commit Fraud, Count XII [D.E. 1]. Clear Marine subsequently filed an Amended Complaint on November 4, 2008, asserting the same claims against Pantropic [D.E. 46]. Pantropic filed a motion to dismiss the First Amended Complaint on November 20, 2008 [D.E. 58]. The Court granted Pantropic's motion to dismiss, and ordered Clear Marine to file an amended complaint as to Defendant Pantropic by April 30, 2009 [D.E. 110]. The Court later struck Clear Marine's Second Amended Complaint [D.E. 123] from the record for asserting additional claims against co-defendants without the permission of the Court, and ordered Clear Marine to file an amended complaint as to Defendant Pantropic by May 15, 2009 [D.E. 131].

Pantropic then filed a motion to dismiss [D.E. 141] as to Counts XIV, XV, and XVI of Plaintiff's Second Amended Complaint [D.E. 134]. Clear Marine filed its response to Pantropic's motion to dismiss on June 25, 2009 [D.E. 172], pointing out that no such causes of action exist and that it appeared Pantropic's motion to dismiss was directed at the Second Amended Complaint that the Court struck from

the record [D.E. 131], and not the Second Amended Complaint that Clear Marine subsequently refiled [D.E. 134].  Nevertheless, Clear Marine addressed the two counts sought to be dismissed by Pantropic's motion, Count XI – Fradulent Inducement and/or Concealment and Count XII – Conspiracy to Commit Fraud, which were also alleged in the operative Second Amended Complaint [D.E. 134]. Pantropic then filed its reply [D.E. 177], adopting its arguments directed to Counts XIV, XV, and XVI of Plaintiff's Second Amended Complaint [D.E. 123] and directing them to Counts XI and XII of Plaintiff's re-filed Second Amended Complaint [D.E. 134].  Pantropic's pending Motion is thus ripe for disposition as to these two counts of the re-filed Second Amended Complaint.

## II.  ANALYSIS

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff.  *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).   The Court must accept all well-pleaded facts as true, as well as make all reasonable inferences therefrom.  *Garfield v. NDC Health Corp*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n. 1 (11th Cir. 1999).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted).  A complaint must have "enough facts to state a claim to relief that is plausible on its face"; if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 1974.

Additionally, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P.  9(b).  The "particularity" requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).  Moreover, it prevents speculative suits against innocent actors for fraud, and guards against "guilt by association."  *United States ex rel. Clausen*, 290 F.3d 1301, 1308 (11th Cir. 2002) (citing *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 566-567 (11th Cir. 1994)).  This is not to say, however, that a plaintiff is expected to actually *prove* his allegations in order to meet the Rule 9(b) particularity requirement, rather he must simply offer more than "mere conjecture." *Id.* at 1313.  Nevertheless, the plaintiff cannot allege fraudulent conduct in a generalized manner, and her complaint must contain specific allegations with respect to each defendant; conclusory allegations 'lumping' multiple defendants together are insufficient.  *See, e.g., Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007 ).

### A. *Motion to Dismiss the Fraud Claim in Count XI*

Clear Marine alleges that Pantropic, despite possessing knowledge of the substantial engine work previously performed on Ventura II's engines, affirmatively represented to Clear Marine that the engines were new with only "factor updates"; and that but for Pantropic's omissions and representations, Plaintiff would have never purchased the vessel [D.E. 134, ¶ 209].  Pantropic argues that Clear Marine has failed to plead fraud with the requisite particularity under Rule 9(b).  We disagree.

Florida law governs Clear Marine's fraudulent inducement claim.  Under Florida law, the elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party.  *Palm Beach Atl. Coll., Inc. v. First United Fund, Ltd.*, 928 F.2d 1538 (11th Cir. 1991) (citing *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984)).  A review of the Second Amended Complaint demonstrates that Clear Marine has sufficiently pled the elements of fraud under Florida law with requisite particularity.

At the motion to dismiss stage, all well-pleaded facts are accepted as true, and all the reasonable inferences therefrom are construed in the light most favorable to the Plaintiff.  *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,

1273 n.1 (11th Cir. 1999). Accordingly, Plaintiff has alleged, with Rule 9(b) particularity, that Pantropic has (1) made a false statement concerning a material fact (the condition of and repairs performed on the vessel's engines); (2) had knowledge that its representation was false (based on tests known to Pantropic); (3) intended that the representation induce Clear Marine to act upon it (because it knew the purpose for which Plaintiff inquired of Pantropic); and (4) Clear Marine relied on the representation to its injury (because the transaction was consummated). Given that Plaintiff has sufficiently alleged the elements of fraud under Florida law, and has satisfied the particularity requirements of Rule 9(b), we should deny the Defendant's motion to dismiss as to Count XI of the Plaintiff's Second Amended Complaint.[1]

---

[1] At the motion to dismiss stage, this Court must look only to the complaint's allegations in a light most favorable to the Plaintiff, as well as make all reasonable inferences therefrom. However, on a Rule 56 Motion for Summary Judgment, the Court may review the record as a whole to determine if Plaintiff's claims may proceed to trial. At that point, the Court can consider whether the record evidence supports the allegation as to Pantropic's knowledge of the alleged misrepresentation. It seems that the only factual basis that Plaintiff may be relying upon to establish Pantropic's knowledge is an oil analysis test that occurred in April 2007, which appears to have been conducted several months *after* the alleged misrepresentation. One cannot determine from the allegations in the complaint if this is in fact the case or whether there may also be other bases for Pantropic's knowledge. If it turns out, of course, that Plaintiff's only basis for proving the knowing misrepresentation is a test that in fact occurred at a later date, and no other evidence points to knowledge before that point, Pantropic's motion for summary judgment may have merit. The Court cannot draw that conclusion now.

### B. *Motion to Dismiss Conspiracy Claim in Count XII*

Clear Marine then alleges that Caterpillar, Pantropic, and Hatteras (Brunswick) acted in concert and agreed not to disclose the repair history of Ventura II's engines [D.E. 134, ¶ 216]. Pantropic argues that Clear Marine fails to state a fraud claim against it, thereby requiring dismissal of the conspiracy, and regardless, dismissal is mandated as Clear Marine fails to provide any specific allegations as to the nature of the purported agreement between the defendants.

In order to state a claim for civil conspiracy, Clear Marine must allege an agreement between two or more parties to do an unlawful act, and an overt act in furtherance of the conspiracy that results in damages. *Am. Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007); *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2D 1157, 1159-1160 (Fla. 3d DCA 2008). Because "a civil conspiracy claim is not an independent cause of action in Florida," Clear Marine must state a claim as to the underlying fraud against Pantropic. *Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862, 863 (11th Cir. 2006). As discussed earlier, Clear Marine sufficiently states a claim for fraudulent inducement and/or concealment in its Second Amended Complaint. We should thus consider whether Clear Marine has provided sufficient factual allegations to support a claim of conspiracy.

While the viability of Clear Marine's conspiracy allegation depends on whether it can state the underlying fraud claim against Pantropic, it must

nevertheless offer more than conclusory allegations as to the conspiracy. *Carlson v. Armstrong World Indus., Inc.*, 693 F. Supp. 1073, 1078 (S.D. Fla. 1987) ("It is necessary to plead fraudulent conspiracy with sufficient particularity") (citing *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984)). This Court has previously determined that Clear Marine's allegation of conspiracy against Defendant Brunswick (Hatteras) lacked any plausible factual allegations as to the nature of the agreement among Defendants Caterpillar, Pantropic, and Brunswick, and as such this Court dismissed that claim [D.E. 174].

Here, likewise, Clear Marine presents only bald allegations that Pantropic conspired with Caterpillar and Hatteras to commit fraud. The Plaintiff's Second Amended Complaint states only in one sentence that "Caterpillar, Pantropic, and Hatteras acted in concert and agreed not to disclose" the vessel's extensive repair history [D.E. 134, ¶ 216]. No supporting facts are alleged, however, as to when such a conspiracy arose or how it was manifested. Without any specific allegations as to the nature of the purported agreement, Count XII lacks the specificity required to support a claim for conspiracy. The Court cannot find that these allegations provide a plausible conspiracy claim as they clearly do not rise above the speculative level. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. at 1964-65.

Therefore, Count XII should be dismissed for these reasons and as previously Ordered by the Court [D.E. 174].

### *III.  CONCLUSION*

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Dismiss be **DENIED** as to Count XI of Plaintiff's Second Amended Complaint, but that the Motion to Dismiss be **GRANTED** as to Count XII for the conspiracy claim.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 1st day of October, 2009.

*/s/  Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge